## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT SPEICHER and COLLEEN STEFFAN, | : | |
| Plaintiffs, | : | NO. 1:20-CV-00764 |
| | : | |
| v. | : | |
| | : | |
| CHANCE RIDES MANUFACTURING, INC.; DEGGELLER ATTRACTIONS, INC.; and RICHARD WARBLE. | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

## AMENDED COMPLAINT

### Jurisdiction and Venue

1.      This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1332, because the citizenship of the parties is diverse and the amount in controversy for each claim detailed here is in excess of $75,000.00.

2.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2), as the events giving rise to this cause of action occurred in York County, in the Middle District of Pennsylvania.

### Parties

3.      Plaintiff, Scott Speicher ("Speicher") is an adult individual who is domiciled and resides at 1124 Fairview Drive, Reading, Pennsylvania.

4.      Plaintiff, Colleen Steffan ("Steffan") is an adult individual who is domiciled and resides at 40 West Main Street, 3rd Floor, Fleetwood, Pennsylvania. (Speicher and Steffan, where appropriate, shall be collectively referred to as "Plaintiffs").

{01553071 }

5.     Defendant, Deggeller Attractions, Inc. ("Deggeller") is a corporation organized and existing under the laws of the State of Florida with offices located at 3350 S W Deggeller Ct., Palm City, FL 34990.

6.     At all times material hereto, Deggeller acted by and through its duly authorized agents, servants, workers, representatives and/or assigns.

7.     Deggeller provides/maintains/operates amusement park rides (which Deggeller owns) at local fairs across the eastern United States.

8.     Deggeller advertises itself as "America's #1 Carnival company!" Specifically, Deggeller advertises that it offers its customers a "spectacular assortment of amusement rides and keen sense of quality and detail, with an emphasis on safety." *See* https://deggeller.com/pageserver/about-us

9.     Defendant, Chance Rides Manufacturing, Inc. ("Chance") is a corporation organized and existing under the laws of the State of Kansas with offices located at 4219 Irving, Wichita, Kansas 67209.

10.     At all times material hereto, Chance acted by and through its duly authorized agents, servants, workers, representatives and/or assigns.

11.     Chance is a roller coaster and amusement ride manufacturer.

12.     At all times relevant to the matters raised in this Complaint, Deggeller and Chance acted through their agents, servants, workers, and/or assigns.

13.     Defendant, Richard Warble ("Warble"), is a Pennsylvania certified inspector of amusement park rides, and a resident of the State of Florida with a mailing address of 1415 Main Street, Lot 270, Dunedin, Florida 34698.

14.     At all times material hereto, Warble acted as an agent, servant, worker, employee, representative and/or assign of Deggeller.

15.     Plaintiffs' claims consist of, *inter alia*, allegations of negligence and products liability related to an incident which occurred at the York Fair in York County, Pennsylvania.

## Background Facts

16.     Paragraphs 1 through 15 are incorporated by reference as though more fully set forth herein.

17.     The York Fair took place in York County, Pennsylvania from September 6, 2019 through September 15, 2019.

18.     The York Fair is a local carnival, open to the public, which offers visitors the opportunity to enjoy, *inter alia*, concerts, food, and amusement park rides.

19.     Deggeller provided/maintained/operated the amusement park rides which were available to the public at the York Fair.

20.     Among the various rides Deggeller operated at the York Fair was the Giant Gondola Wheel (Serial #: 40003593; Pennsylvania Department of Agriculture Ride ID No. 2660) (the "Wheel").

21.     Deggeller erected and/or installed the Wheel at a location at the York Fair that was in close proximity to a loud generator which powered the Wheel and/or other amusement rides.

22.     Chance distributed and/or sold the Wheel, placing it in the stream of commerce, and ultimately sold, or caused to be sold, the Wheel to Deggeller.

23.     At all times material hereto, Chance also provided amusement ride operators such as Deggeller with instructions for the erection and/or installation of the Wheel.

24.     Warble was retained by Deggeller to inspect its amusement rides at the York Fair, including but not limited to the Wheel, for safety before, during, and after its use at the York Fair.

25.     The Wheel, which resembles a typical Ferris wheel, is a rotating upright wheel with twenty (20) passenger-carrying gondolas attached to the rim in such a way that as the Wheel turns, the gondolas are kept upright.

26.     Each gondola on the Wheel was capable of carrying up to six (6) adult riders.

27.     During normal operation, the Wheel is intended to rotate and allow the riders contained in the gondolas to travel in a circle which, at its peak, reaches approximately 90-feet off the ground.

28.     At all times, the bases and/or floors of the Wheel's gondolas are intended to remain parallel to the ground.

29.     On September 13, 2019, Plaintiffs attended the York Fair.

30.     While attending the York Fair, Plaintiffs paid for and were granted access/permission to ride the Wheel.

31.     Plaintiffs were seated in a gondola by Deggeller's employees/agents.

32.     Plaintiffs were the only passengers in the particular gondola in which they were seated on the Wheel.

33.     After being seated, the Wheel began its revolution, thereby lifting the gondola containing Plaintiffs far off the ground.

34.     During their ride, a large metal bar became detached at one end of the Wheel and swung to the side of gondola containing Plaintiffs.

35.     As the Wheel continued to rotate, Plaintiffs called-out to the Deggeller employees/agents operating the Wheel to notify them of the detached metal bar.

36.     Notwithstanding Plaintiffs' best attempts to notify the operators of the Wheel, the operators allowed the Wheel to continue its revolution.

37.     Plaintiffs believe and therefore aver that the operators of the Wheel allowed it to continue its revolution because they could not hear Plaintiffs due to the loud sounds emanating from the nearby generator and/or ignored Plaintiffs.

38.     Suddenly and without warning, the gondola containing Plaintiffs began to tip to the side.

39.     In an effort to hold on for their lives, Plaintiffs grasped a large metal pole located in the middle of the gondola.

40.     Subsequently, the gondola containing Plaintiffs inverted.

41.     The gondola containing Plaintiffs inverted as a result of, *inter alia*, the following:

   a.   The gondola was jammed in place during the incident, which caused it to tip (failing to swing freely and maintain an upright position while the Wheel rotated) after a loose tie rod contacted the canopy of the gondola;

   b.   The tie rod is designed to be held in place by a pin and hairpin (a/k/a r-key, 'Hairpin' is Chance's terminology used in the manufacturer owner's manual), commonly known as a pin and r-key;

   c.   The pin, Hairpin or pin and Hairpin combination failed causing the tie rod to come loose and make contact with the gondola carrying Plaintiffs; and/or

   d.   This, in turn, caused the gondola to jam in place, cease from swinging freely, and ultimately invert.

42.     As a result, Speicher was ejected from the Wheel, falling approximately twenty-five (25) feet to the ground.

43.     After Speicher was ejected, the gondola violently repositioned itself, throwing Steffan about inside the gondola as if she was being rattled inside a cage.

44.     The Wheel was eventually stopped, and Steffan was removed from the gondola by Deggeller's employees/agents who Deggeller had hired/retained/used to construct, install, erect, operate, and/or maintain the Wheel.

45.     Plaintiffs were ultimately taken to York Community Hospital where they received emergency medical care for the serious injuries they sustained as a result of this incident.

46.     At all times relevant, Plaintiffs used due care under the circumstances, responsibly rode the Wheel, and in no way contributed to the incident.

47.     Following the incident, the Pennsylvania Department of Agriculture, Division of Rides and Amusements (the "Department") conducted an investigation of the incident.

48.     A faulty Hairpin was removed from one of the other tie rods on the Wheel during an investigation on the evening of the incident.

49.     The Department did not find any information which suggested that Plaintiffs were in any way the cause of the incident.

50.     On October 16, 2019, the Department issued a written report regarding its findings related to the above referenced incident (the "Report"). A true and correct copy of the Report is attached hereto as Exhibit "A," the contents of which are incorporated as if set forth at length herein.

51.     In the Report, the Department states, *inter alia*, that "[t]he Department had issued a bulletin concerning the use and inspection of pins and r-keys on August 16, 2019 and reissued the bulletin on September 18, 2019. Both were sent by e-mail, the first to all owners and the second to all owners and inspectors of registered Pennsylvania amusement rides." Exhibit "A," pg. 3; *see also* a true and correct copy of the referenced bulletin is attached hereto and marked as Exhibit "B," the contents of which is incorporated as if set forth at length herein.

52.     The August 16, 2019 bulletin referenced above states, *inter alia*, the following: "Incorrectly installed hairpins are more likely to fail, and will distort after only a few uses." *See* Exhibit "B."

53.     At the time of the incident, Plaintiffs believe and therefore aver that the Wheel was defective.

54.     Specifically, the pins and/or Hairpins related to the tie rods (as discussed above) on the Wheel were faulty, negligently and/or improperly installed, and/or inadequate in size and/or condition.

55.     Defendants, *inter alia*, did not take the necessary steps to ensure that appropriately-sized pins and/or Hairpins were properly positioned on the Wheel and/or that the pins and/or Hairpins were properly installed in order to allow safe operation.

56.     Notwithstanding the bulletins previously referenced herein, Defendants failed to take the necessary actions to ensure that the Wheel and its various components were properly installed, were the correct size, and/or were in working order.

57.     The aforesaid defects in the Wheel and/or the concurrent negligence, recklessness, and carelessness of Defendants were substantial factors in causing and/or factual causes of Plaintiffs' numerous and serious injuries which will be further detailed herein.

58.     Deggeller and/or Chance negligently placed the Wheel in the stream of commerce knowing and/or failing to know of the unfit, unsafe, and unsuitable condition of the Wheel and/or negligently failed to use reasonable care to prevent injury to foreseeable users of the Wheel, including Plaintiffs.

59.     Warble failed to utilize due care under the circumstances in conducting his inspections of the Wheel.

### Plaintiffs' Injuries

60.     Paragraphs 1 through 59 are incorporated by reference as though more fully set forth herein.

61.     As a result of the incident, Speicher suffered, *inter alia*, the following:

    a.   A fracture of his right radial head which required surgery;

    b.   A fractured left hand which required surgery;

    c.   A loss of the ability to fully flex and extend his fingers;

    d.   Closed nondisplaced fracture of triquetrum of right wrist;

    e.   Multiple fractured ribs;

    f.   Fractured sinuses;

    g.   A fractured skull;

    h.   An intracranial hemorrhage; and

    i.   Bruises, cuts, abrasions, and other injuries.

62.     As a result of the incident, Steffan suffered, *inter alia*, the following:

    a.   A large lumbosacral-hematoma on her back;

    b.   An abdominal wall contusion;

c.   Bilateral buttock pain;

d.   Dislocated distal tip of the coccyx;

e.   Focal abnormalities in two (2) peroneal innervated muscles suggesting peroneal contusion/injury;

f.   An injury to her back for which a surgical procedure was performed;

g.   Annular bulging of the L3/L4 discs;

h.   L4/L5 disc space narrowing and desiccation, and broad based posterior disc bulge with probable superimposed small central/left paracentral disc protrusion;

i.   L5/S1 disc space narrowing and desiccation, and broad-based posterior disc bulge;

j.   Pain in her back which required pain injection treatment; and

k.   Post-traumatic stress disorder (PTSD);

l.   Emotional upset and trauma;

m.   Bruises, cuts, abrasions, and other injuries.

63.   As a result of the foregoing, Plaintiffs have endured and continue to endure great pain and suffering.

64.   As a result of the foregoing, Plaintiffs have and will continue to suffer the diminution in their ability to enjoy life and life's pleasures.

65.   As a result of the foregoing, Plaintiffs have suffered a loss of earnings and/or a loss of earning capacity in a presently undeterminable amount.

66.   As a result of the foregoing, Plaintiffs' economic horizons have been dimmed.

67.     As a result of the foregoing, Plaintiffs have and will continue to suffer further anxieties, nervousness and/or depression.

68.     As a result of the foregoing, Plaintiffs have and continue to suffer embarrassment, humiliation and mental anguish.

69.     As a result of the foregoing, Plaintiffs have been and continue to be unable to engage in normal recreational activities, as well as normal household chores.

70.     As a result of the foregoing, Plaintiffs have required and will require further medical treatment and have been required to pay and will in the future be required to pay medical expenses in a presently undetermined amount.

71.     As a result of the foregoing, Plaintiffs have been unable to enjoy the pleasures of life and their ability to enjoy said pleasures may be impaired for the remainder of their nature lives.

72.     As a result of the foregoing, Plaintiffs have undergone and may continue to undergo further medical care and/or therapy in an attempt to adjust the overall quality of their lives.

### Count I - Scott Speicher v. Deggeller
**(Negligence)**

73.     Paragraphs 1 through 72 are incorporated by reference as though more fully set forth herein.

74.     The aforesaid occurrences and the serious and permanent injuries sustained by Plaintiffs were concurrently caused by the direct, proximate and foreseeable negligence, carelessness and/or recklessness of Deggeller as follows:

    a.  In providing for use by its patrons the Wheel which contained the defects previously discussed herein;

b.  In failing to properly test, repair and/or maintain the Wheel;

c.  In failing to properly install/erect the Wheel and its various components;

d.  In failing to take the appropriate steps necessary to protect individuals such as Plaintiffs from being harmed;

e.  In failing to provide/install the appropriately sized pins and/or Hairpins on the Wheel;

f.  In failing to install appropriately sized pin and/or Hairpins in the appropriate position on the Wheel;

g.  By erecting the Wheel in such a manner that patrons such as Plaintiffs could not be heard when yelling for help while riding the Wheel;

h.  In failing to properly stop the Wheel before the incident in question where the Wheel had noticeably malfunctioned;

i.  In failing to properly stop the Wheel during the incident in question where the Wheel had noticeably malfunctioned;

j.  In failing to have adequate procedures, protocols and/or guidelines for the erection/installation/construction/operation/maintenance of all of the Wheel;

k.  In failing to properly operate the Wheel;

l.  In allowing Plaintiffs to ride the Wheel which was broken and/or otherwise defective;

m.  In failing to provide its patrons, including but not limited to Plaintiffs, with instructions for the safe use of the Wheel;

n.   In failing to provide patrons such as Plaintiffs with adequate warnings regarding the safety (or lack thereof) of the Wheel;

o.   In failing to appropriately hire, train, and/or adequately supervise its employees/agents who were in-charge of erecting, inspecting, operating, and maintaining the Wheel;

p.   In failing to properly inspect the Wheel;

q.   In failing to have in place the proper procedures, protocols, guidelines and/or policies to ensure that all of its components of the Wheel were functioning properly;

r.   In failing to utilize the proper pins, hair pins and/or r-keys when erecting and/or installing the Wheel;

s.   In failing to have in place the proper policies, procedures, guidelines and/or protocols to ensure that all of its equipment, including but not limited to the Wheel and its components, were properly erected and/or maintained; and

t.   In otherwise being negligent under the circumstances.

75.     As a direct and proximate cause of the aforementioned failures, Plaintiffs suffered the aforementioned damages/injuries.

76.     Because the defects of the Wheel that caused the aforesaid harms, injuries and/or damages to Plaintiffs existed at the time that the Department released the bulletins previously referenced herein, Deggeller's failure to adhere to the warnings in said bulletins demonstrates its outrageous, malicious, wanton, reckless, willful, and/or oppressive conduct and their reckless indifference to the rights of others.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count II - Scott Speicher v. Chance
**(Negligence)**

77.    Paragraphs 1 through 76 are incorporated by reference as though more fully set forth herein.

78.    The aforesaid occurrences and the serious and permanent injuries sustained by Plaintiffs were concurrently caused by the direct, proximate and foreseeable negligence, carelessness and/or recklessness of Chance as follows:

a.    In providing for use by the public the Wheel which contained the defects previously discussed herein;

b.    In failing to properly test, repair and/or maintain the Wheel;

c.    In failing to properly design and/or manufacture the Wheel;

d.    In failing to properly inspect the Wheel;

e.    In designing the Wheel in such a manner that improperly sized pins and/or Hairpins could be used on the Wheel;

f.    In designing the Wheel in such a manner that the pins and/or Hairpins on the Wheel could easily be installed in an improper orientation;

g.    In providing incomplete and/or inaccurate instructions on how to erect/construct the Wheel. Specifically, in failing to provide instructions related to proper pin and/or Hairpins size and orientation on the Wheel;

h.    In failing to take the appropriate steps necessary to protect individuals such as Plaintiffs from being harmed;

i.   In failing to provide/install the appropriate pin and/or Hairpins in the appropriate position;

j.   In failing to provide adequate directions/instructions for the installation/set-up of the Wheel;

k.   In failing to have adequate procedures, protocols and/or guidelines for the operation/maintenance of all of the Wheel;

l.   In failing to provide its the public, including but not limited to Plaintiffs, with instructions for the safe use of the Wheel;

m.   In failing to provide the public such as Plaintiffs with adequate warnings regarding the safety (or lack thereof) of the Wheel;

n.   In failing to have in place the proper procedures, protocols, guidelines and/or policies to ensure that all of its components of the Wheel were installed and/or functioning properly;

o.   In failing to have in place the proper policies, procedures, guidelines and/or protocols to ensure that all of its equipment, including but not limited to the Wheel and its components, were properly maintained; and

p.   In otherwise being negligent under the circumstances.

79.    As a direct and proximate cause of the aforementioned failures, Plaintiffs suffered the aforementioned damages/injuries.

80.    Because the defects of the Wheel that caused the aforesaid harms, injuries and/or damages to Plaintiffs existed at the time that the Department released the bulletins previously referenced herein, and because it provided inaccurate instructions, Chance's failure to adhere to

the warnings in said bulletins demonstrates its outrageous, malicious, wanton, reckless, willful, and/or oppressive conduct and their reckless indifference to the rights of others.

81.     Chance knew or should have known (a) improperly sized pins and/or Hairpins could be used on the Wheel; and/or (b) the pins and/or Hairpins on Wheel could be easily installed in an improper orientation, and did nothing prevent the same, thereby negligently, recklessly, and carelessly placing patrons such Plaintiff in danger of suffering harm, such as the harm suffered by Plaintiffs in the aforementioned incident.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Chance Rides Manufacturing, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

## Count III - Scott Speicher v. Warble
### (Negligence)

82.     Paragraphs 1 through 81 are incorporated by reference as though more fully set forth herein.

83.     The aforesaid occurrences and the serious and permanent injuries sustained by Plaintiffs were concurrently caused by the direct, proximate and foreseeable negligence, carelessness and/or recklessness of Warble as follows:

        a.   In failing to properly inspect the Wheel before its use at the York Fair;

        b.   In failing to properly inspect the Wheel during its use at the York Fair;

        c.   In failing to ensure that the Wheel was properly erected, constructed and/or that the components of the Wheel were properly installed;

        d.   In failing to properly document the above-mentioned issues with the Wheel;

        e.   In failing to properly test, repair and/or maintain the Wheel;

f.   In failing to take the appropriate steps necessary to protect individuals such as Plaintiffs from being harmed;

g.   In failing to provide patrons such as Plaintiffs with adequate warnings regarding the safety (or lack thereof) of the Wheel;

h.   In failing to report to Deggeller and/or other appropriate third-parties, (a) the defects in the Wheel's design; (b) the improper size and/or installation of the aforementioned pins and/or Hairpins on the Wheel; and/or (c) other noticeable dangers present on the Wheel;

i.   In failing to take corrective action related to the defects present on the Wheel during the incident;

j.   In failing to comply with the warnings related to the pins and/or Hairpins as detailed in the bulletins previously referenced herein;

k.   In failing to have in place the proper procedures, protocols, guidelines and/or policies to ensure that all of its components of the Wheel were inspected and functioning properly;

l.   In failing to properly inspect the pins; hairpins and/or r-keys in the Wheel;

m.   In failing to have in place the proper policies, procedures, guidelines and/or protocols to ensure that all of its equipment, including but not limited to the Wheel and its components, were properly maintained; and

n.   In otherwise being negligent under the circumstances.

84.   As a direct and proximate cause of the aforementioned failures, Plaintiffs suffered the aforementioned damages/injuries.

85.     Because the defects of the Wheel that caused the aforesaid harms, injuries and/or damages to Plaintiffs existed at the time that the Department released the bulletins previously referenced herein, Warble's failure to adhere to the warnings in said bulletins demonstrates his outrageous, malicious, wanton, reckless, willful, and/or oppressive conduct and their reckless indifference to the rights of others.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Richard Warble in an amount in excess of $75,000.00 as well as punitive damages and the costs of this suit.

### Count IV - Scott Speicher v. Deggeller
### (Vicarious Liability and/or Respondeat Superior)

86.     Paragraphs 1 through 85 are incorporated by reference as though more fully set forth herein.

87.     Warble and/or the individuals who erected, operated, installed, constructed, inspected and maintained the Wheel acted for and/or on behalf of Deggeller and are the agents, servants, employees, workmen and/or assigns of Deggeller and were held out as such.

88.     At all times relevant hereto, Warble and/or the individuals who erected, operated, installed, constructed, inspected and maintained the Wheel were acting within the course and scope of their relationship with Deggeller and/or under the charge, direction and/or control of Deggeller and, as such, acted as the agents, servants, employees, workmen and/or assigns of Deggeller.

89.     Deggeller is vicariously liable and/or liable under the theory of Respondeat Superior for the commissions and/or omissions of Warble and/or the individuals who erected, operated, installed, constructed, inspected and maintained the Wheel as though it performed the acts or omissions itself.

{01553071  }

90.     There was a holding out to the public that Deggeller was affiliated with Warble a and/or the individuals who erected, operated, installed, constructed, inspected and maintained the Wheel and/or that they were affiliated with Deggeller as either the agents, servants, employees, workmen, assigns and/or in a joint venture.

91.     As a direct and proximate result of the concurrent conduct of Warble and/or the individuals who erected, operated, installed, constructed, inspected  and maintained the Wheel, as more fully set forth herein, Plaintiffs suffered the injuries and damages more fully set forth herein.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count V - Scott Speicher v. Deggeller
**(Negligent Supervision)**

92.     Paragraphs 1 through 91 are incorporated by reference as though more fully set forth herein.

93.     Deggeller failed to exercise ordinary care to prevent the harm suffered by Plaintiffs which resulted from the actions and/or inactions of Warble and/or the individuals who erected, operated, installed, constructed, inspected and maintained the Wheel who were acting within and/or outside the scope of their relationship with Deggeller.

94.     The harm suffered by Plaintiffs and the actions and/or inactions of Warble and/or the individuals who erected, operated, installed, constructed, inspected and maintained the Wheel occurred on premises controlled by Deggeller.

95.     Deggeller knew or should have known of the necessity and ability to control Warble and/or the individuals who erected, operated, installed, constructed, inspected and maintained the Wheel.

96.     As a direct and proximate result Deggeller's failure to supervise Warble and/or the individuals who erected, operated, installed, constructed, inspected and maintained the Wheel, as more fully set forth herein, Plaintiffs suffered the injuries and damages more fully set forth herein.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

## Count VI - Scott Speicher v. Deggeller
### (Negligent Hiring)

97.     Paragraphs 1 through 96 are incorporated by reference as though more fully set forth herein.

98.     Deggeller knew or should have known of the propensities of Warble and/or the individuals who erected, operated, installed, constructed, inspected and maintained the Wheel. Specifically, Deggeller knew or should have known that these individuals were not sufficiently trained and/or knowledgeable in regard to (a) erecting/constructing/installing the Wheel, (b) maintaining the Wheel; (c) inspecting the Wheel; and (d) operating the Wheel.

99.     As a direct and proximate result of Deggellers hiring/use of Warble and/or the individuals who erected, operated, installed, constructed, inspected and maintained the Wheel, Deggeller created a situation whereby third-parties such as Plaintiffs could be harmed.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

**Count VII - Scott Speicher v. Deggeller**
**(Strict Liability – Restatement §402 A – Failure to Warn)**

100.    Paragraphs 1 through 99 are incorporated by reference as though more fully set forth herein.

101.    At all times relevant hereto, the Wheel was unreasonably dangerous, unfit, unsafe, and/or unsuitable for its intended or foreseeable uses and/or was otherwise defective in design, manufacture, distribution, sale, operation, and/or warning(s).

102.    Deggeller supplied the Wheel directly or through a third party/person to Plaintiffs and other members of the public, whom Deggeller should have expected to use the Wheel and/or to be endangered by the Wheel's use.

103.    At all times relevant to this action, Deggeller knew or should have known that the Wheel was dangerous or was likely to be dangerous for the use for which it was supplied and/or intended.

104.    Deggeller failed to exercise reasonable care to inform and/or warn expected or foreseeable users of the Wheel of its dangerous condition or of the facts that made the Wheel likely to be dangerous.

105.    The dangers presented by the Wheel were unknowable and unacceptable to the average or ordinary consumer.

106.    A reasonable person would conclude that the probability and seriousness of harm caused by the Wheel outweigh the burden or costs of taking precautions.

107.    As a purveyor of goods and/or a product, *i.e.* the Wheel, Deggeller is strictly liable for any harm that the Wheel causes if it is sold and/or provided in a defective condition, unreasonably dangerous to the user and/or consumer.

108.    An otherwise properly designed good and/or product may still be unreasonably dangerous and therefore defective if the good and/or product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers in the good and/or product.

109.    No warnings with regard to the Wheel were available to Plaintiffs and Plaintiffs believe and therefore aver that no such warnings existed.

110.    If any such warnings existed, they were inadequate.

111.    Plaintiffs believe and therefore aver that the aforesaid Wheel as provided by Deggeller was defective in that Deggeller failed to warn Plaintiffs of the harm that could occur to the user and/or consumer of the same which includes but is not limited to the harm that could result from malfunction and/or failure of the Wheel itself.

112.    Moreover, Deggeller failed to provide proper instructions as to the use/occupancy of the Wheel.

113.    The lack of adequate warnings rendered the Wheel unreasonably dangerous.

114.    Insufficient warnings with regard to the Wheel was the cause in fact and the proximate cause of the harms, injuries and/or damages suffered by Plaintiffs.

115.    The existence of accurate warnings and/or instructions with regard to the Wheel would have prevented Plaintiffs' injuries, harms and/or damages as Plaintiffs would have heeded such warnings and/or followed such instructions.

116.    Plaintiffs did not know that they could be injured by riding the Wheel.

117.    Because of the manner in which Deggeller sold and/or provided access to the Wheel, Plaintiffs believed that it was safe to ride the Wheel.

118.    As a direct and proximate result of said product defects and/or the lack of adequate warnings discussed above, Plaintiffs were caused to sustain severe personal injuries, both temporary and permanent in nature; has suffered, is suffering, and may, in the future, suffer great pain and discomfort; has incurred, is incurring, and may, in the future, be caused to incur expenses for hospital and/or medical treatments in an effort to cure and alleviate said injuries; has been and may in the future, be unable to pursue their normal activities, resulting in a loss of monies, and future wages and benefits, and has been otherwise damaged.

119.    The defects of the Wheel that caused the aforesaid harms, injuries and/or damages to Plaintiffs existed at the time when Deggeller sold and/or provided access to the Wheel to Plaintiffs.

120.    Because the defects of the Wheel that caused the aforesaid harms, injuries and/or damages to Plaintiffs existed at the time that the Department released the bulletins previously referenced herein, Deggeller's failure to adhere to the warnings in said bulletins demonstrates its outrageous, malicious, wanton, reckless, willful, and/or oppressive conduct and their reckless indifference to the rights of others.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count VIII - Scott Speicher v. Chance
### (Strict Liability – Restatement §402 A – Failure to Warn)

121.    Paragraphs 1 through 120 are incorporated by reference as though more fully set forth herein.

{01553071 }

122.    At all times relevant hereto, the Wheel was unreasonably dangerous, unfit, unsafe, and/or unsuitable for its intended or foreseeable uses and/or was otherwise defective in design, manufacture, distribution, sale, operation, and/or warning(s).

123.    Chance designed, manufactured, distributed, and/or supplied the Wheel directly or through a third party/person to Plaintiffs and other members of the public, whom Chance should have expected to use the Wheel and/or to be endangered by the Wheel's use.

124.    At all times relevant to this action, Chance knew or should have known that the Wheel was dangerous or was likely to be unreasonably dangerous for the use for which it was supplied and/or intended.

125.    Chance failed to exercise reasonable care to inform and/or warn expected or foreseeable users of the Wheel of its dangerous condition or of the facts that made the Wheel likely to be dangerous.

126.    The dangers presented by the Wheel were unknowable and unacceptable to the average or ordinary consumer.

127.    A reasonable person would conclude that the probability and seriousness of harm caused by the Wheel outweigh the burden or costs of taking precautions.

128.    As a purveyor of goods and/or a product, *i.e.* the Wheel, Chance is strictly liable for any harm that the Wheel causes if it is sold and/or provided in a defective condition, unreasonably dangerous to the user and/or consumer.

129.    An otherwise properly designed good and/or product may still be unreasonably dangerous and therefore defective if the good and/or product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers in the good and/or product.

130.    No warnings with regard to the Wheel were available to Plaintiffs and Plaintiffs believe and therefore aver that no such warnings existed.

131.    If any such warnings existed, they were inadequate.

132.    Plaintiffs believe and therefore aver that the aforesaid Wheel as provided by Chance was defective in that Chance failed to warn Plaintiffs of the harm that could occur to the user and/or consumer of the same which includes but is not limited to the harm that could result from malfunction and/or failure of the Wheel itself.

133.    Moreover, Chance failed to provide proper instructions as to the use/occupancy of the Wheel.

134.    The lack of adequate warnings rendered the Wheel unreasonably dangerous.

135.    Insufficient warnings with regard to the Wheel was the cause in fact and the proximate cause of the harms, injuries and/or damages suffered by Plaintiffs.

136.    The existence of accurate warnings and/or instructions with regard to the Wheel would have prevented Plaintiffs' injuries, harms and/or damages as Plaintiffs would have heeded such warnings and/or followed such instructions.

137.    Plaintiffs did not know that they could be injured by riding the Wheel.

138.    Because of the manner in which Chance sold and/or provided access to the Wheel, Plaintiffs believed that it was safe to ride the Wheel.

139.    As a direct and proximate result of said product defects and/or the lack of adequate warnings discussed above, Plaintiffs were caused to sustain severe personal injuries, both temporary and permanent in nature; has suffered, is suffering, and may, in the future, suffer great pain and discomfort; has incurred, is incurring, and may, in the future, be caused to incur expenses for hospital and/or medical treatments in an effort to cure and alleviate said injuries;

has been and may in the future, be unable to pursue their normal activities, resulting in a loss of monies, and future wages and benefits, and has been otherwise damaged.

140.    The defects of the Wheel that caused the aforesaid harms, injuries and/or damages to Plaintiffs existed at the time when Chance sold and/or provided access to the Wheel to Plaintiff.

141.    Because the defects of the Wheel that caused the aforesaid harms, injuries and/or damages to Plaintiffs existed at the time that the Department released the bulletins previously referenced herein, Chance's failure to adhere to the warnings in said bulletins demonstrates its outrageous, malicious, wanton, reckless, willful, and/or oppressive conduct and their reckless indifference to the rights of others.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Chance Rides Manufacturing, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count IX - Scott Speicher v. Deggeller
### (Strict Liability – Restatement §402 A - Design Defect)

142.    Paragraphs 1 through 141 are incorporated by reference as though more fully set forth herein.

143.    The Wheel was not properly designed to allow patrons such as Plaintiffs to safely ride the Wheel.

144.    Specifically, the design of the Wheel as it pertains to (a) the pins and/or Hairpins related to the tie rods (as discussed above); (b) the orientation of the pins and/or Hairpins; and (c) the location of the same on the Wheel rendered the Wheel improperly designed.

145.    The improper design of the Wheel and its components rendered the Wheel defective and unreasonably dangerous.

{01553071  }

146.     As a direct and proximate result of said product defect(s) and dangers, Plaintiffs were caused to sustain severe personal injuries, both temporary and permanent in nature; has suffered, is suffering, and may, in the future, suffer great pain and discomfort; has incurred, is incurring, and may, in the future, be caused to incur expenses for hospital and/or medical treatments in an effort to cure and alleviate said injuries; has been and may in the future, be unable to pursue their normal activities, resulting in a loss of monies, and future wages and benefits, and has been otherwise damaged.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count X - Scott Speicher v. Chance
### (Strict Liability – Restatement §402 A - Design Defect)

147.     Paragraphs 1 through 146 are incorporated by reference as though more fully set forth herein.

148.     The Wheel was not properly designed to allow patrons such as Plaintiffs to safely ride the Wheel.

149.     Specifically, the design of the Wheel as it pertains to (a) the pins and/or Hairpins related to the tie rods (as discussed above); (b) the orientation of the pins and/or Hairpins; and (c) the location of the same on the Wheel rendered the Wheel improperly designed.

150.     Chance knew or should have known that the pins could easily be installed improperly and took no action to ensure that proper pin orientation and size were always used when erecting/constructing the Wheel.

151.     The improper design of the Wheel and its components rendered the Wheel defective and unreasonably dangerous.

152.     As a direct and proximate result of said product defect(s), Plaintiffs were caused to sustain severe personal injuries, both temporary and permanent in nature; has suffered, is suffering, and may, in the future, suffer great pain and discomfort; has incurred, is incurring, and may, in the future, be caused to incur expenses for hospital and/or medical treatments in an effort to cure and alleviate said injuries; has been and may in the future, be unable to pursue their normal activities, resulting in a loss of monies, and future wages and benefits, and has been otherwise damaged.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Chance Rides Manufacturing, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

<u>**Count XI - Scott Speicher v. Deggeller**</u>
**(Breach of Warranties)**

153.     Paragraphs 1 through 152 are incorporated by reference as though more fully set forth herein.

154.     At the time of the operation, licensing, and/or sale of the Wheel and/or rides thereon and thereafter, Deggeller dealt in products/goods of that type and held themselves out as having knowledge or skills peculiar to the design, manufacture, distribution, operation, licensing, and/or sale of such products/goods/services.

155.     Deggeller expressly and/or impliedly warranted that the Wheel was fit, safe, and suitable for the use for which it was intended and Plaintiffs relied upon those warranties.

156.     The Wheel was unfit, unsafe, and/or unsuitable for its usual or intended use, Deggeller breached its warranties.

157.     The injuries that Plaintiffs sustained occurred as a proximate result of the breach by Deggeller of its warranties.

{01553071 }

158.     As a direct and proximate result of said breach of the foregoing warranties, Plaintiffs were caused to sustain severe personal injuries, both temporary and permanent in nature; has suffered, is suffering, and may, in the future, suffer great pain and discomfort; has incurred, is incurring, and may, in the future, be caused to incur expenses for hospital and/or medical treatments in an effort to cure and alleviate said injuries; has been and may in the future, be unable to pursue their normal activities, resulting in a loss of monies, and future wages and benefits, and has been otherwise damaged.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count XII - Scott Speicher v. Chance
### (Breach of Warranties)

159.     Paragraphs 1 through 158 are incorporated by reference as though more fully set forth herein.

160.     At the time of the operation, licensing, and/or sale of the Wheel and/or rides thereon and thereafter, Chance dealt in products/goods of that type and held themselves out as having knowledge or skills peculiar to the design, manufacture, distribution, operation, licensing, and/or sale of such products/goods/services.

161.     Chance expressly and/or impliedly warranted that the Wheel was fit, safe, and suitable for the use for which it was intended and Plaintiffs relied upon those warranties.

162.     The Wheel was unfit, unsafe, and/or unsuitable for its usual or intended use, Chance breached its warranties.

163.     The injuries that Plaintiffs sustained occurred as a proximate result of the breach by Chance of its warranties.

164.     As a direct and proximate result of said breach of the foregoing warranties, Plaintiffs were caused to sustain severe personal injuries, both temporary and permanent in nature; has suffered, is suffering, and may, in the future, suffer great pain and discomfort; has incurred, is incurring, and may, in the future, be caused to incur expenses for hospital and/or medical treatments in an effort to cure and alleviate said injuries; has been and may in the future, be unable to pursue their normal activities, resulting in a loss of monies, and future wages and benefits, and has been otherwise damaged.

WHEREFORE, Plaintiff, Scott Speicher, demands that judgment be entered in his favor and against Defendant, Chance Rides Manufacturing, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count XIII - Colleen Steffan v. Deggeller
**(Negligence)**

165.     Paragraphs 1 through 164 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count XIV - Colleen Steffan v. Chance
**(Negligence)**

166.     Paragraphs 1 through 165 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Chance Rides Manufacturing, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count XV - Colleen Steffan v. Warble
**(Negligence)**

167.    Paragraphs 1 through 166 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Richard Warble in an amount in excess of $75,000.00 as well as punitive damages and the costs of this suit.

### Count XVI - Colleen Steffan v. Deggeller
**(Vicarious Liability and/or Respondeat Superior)**

168.    Paragraphs 1 through 167 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count XVII - Colleen Steffan v. Deggeller
**(Negligent Supervision)**

169.    Paragraphs 1 through 168 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count XVIII - Colleen Steffan v. Deggeller
**(Negligent Hiring)**

170.    Paragraphs 1 through 169 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

**Count XIX - Colleen Steffan v. Deggeller**
**(Strict Liability – Restatement §402 A – Failure to Warn)**

171.    Paragraphs 1 through 170 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

**Count XX - Colleen Steffan v. Chance**
**(Strict Liability – Restatement §402 A – Failure to Warn)**

172.    Paragraphs 1 through 171 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Chance Rides Manufacturing, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

**Count XXI - Colleen Steffan v. Deggeller**
**(Strict Liability – Restatement §402 A - Design Defect)**

173.    Paragraphs 1 through 172 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count XXII - Colleen Steffan v. Chance
### (Strict Liability – Restatement §402 A - Design Defect)

174.    Paragraphs 1 through 173 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Chance Rides Manufacturing, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count XXIII - Colleen Steffan v. Deggeller
### (Breach of Warranties)

175.    Paragraphs 1 through 174 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Deggeller Attractions, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

### Count XXIV - Colleen Steffan v. Chance
### (Breach of Warranties)

176.    Paragraphs 1 through 175 are incorporated by reference as though more fully set forth herein.

WHEREFORE, Plaintiff, Colleen Steffan, demands that judgment be entered in her favor and against Defendant, Chance Rides Manufacturing, Inc. in an amount in excess of $75,000.00, plus punitive damages, as well as the costs of this suit.

Respectfully submitted,

**Leisawitz Heller Abramowitch Phillips, P.C.**

_____
Kenneth Millman, Esquire
Attorney I.D. No. 75272
Paul F. Troisi, Esquire
Attorney I.D. No. 309511
2755 Century Boulevard
Wyomissing, PA 19610
(610) 372-3500
*Attorneys for Plaintiff*

# EXHIBIT "A"



**pennsylvania**
DEPARTMENT OF AGRICULTURE
DIVISION OF RIDES AND AMUSEMENTS

**Date:**       October 16, 2019

**From:**       Walter Remmert, Director
                Bureau of Ride and Measurement Standards
                Pennsylvania Department of Agriculture

**Subject:**    **Investigative Report**
                **Amusement Ride Reopening Requirements**
                **Amusement Ride:  Giant Gondola Wheel**
                **PA Ride ID Number:  2660**
                **7 PA Code § 139.11(c)(2)**


## I.  Overview.

The Pennsylvania Department of Agriculture (the "Department") is responsible for oversight of amusement rides and attractions throughout Pennsylvania, in accordance with the Amusement Ride Inspection Act.

The subject of this investigative report is the Giant Gondola Wheel (the "Wheel") – an amusement ride owned and operated by Deggeller Attractions Inc. ("Deggeller") that was located at York Fair Grounds, York, Pennsylvania at the time of the accident.  The Wheel is registered with the Department and has been assigned PA Ride ID Number 2660.

The investigation described in this report was prompted by an incident that occurred on September 13, 2019.  A forty-five-year-old male fell from a gondola while the Wheel was in operation.  The Department's Quality Assurance Supervisor and additional Quality Assurance Inspectors immediately responded to the scene on that date and initiated the on-site investigation described in this report.

Deggeller closed the Wheel immediately after the accident, as required by the Amusement Ride Inspection Act (at 4 P.S. § 407(d)).  The Wheel has not operated in the Commonwealth since the accident, pending the final determination of the Department.

This report determines the circumstances under which the Department will approve the Wheel to reopen. (See: 7 Pa. Code § 139.11(c)(2)).  *It does not determine or assign legal culpability*.

In summary, the Department requires three steps/actions before it will inspect the Wheel to determine whether it is approved to reopen.  These are:

1.  Verify to the Department that the gondola, related tie rods and support structure are undamaged or replaced to meet manufacturer's specifications.  Verify the rest of the ride was not affected by the incident and is in good repair and working order.

2.  Verify the appropriate pins and r-keys for the ride are being utilized along with confirmation of their proper installation.

3. Provide the Department a written description of: (a) any changes to owner's manual concerning the specifications of the proper pins and r-keys to be used for the ride as described above; and (b) any updates to the operator's manual concerning operators being trained properly in emergency procedures and the audit process to ensure they are adhering to the requirements.

## II. Investigation.

### Ride Information & Conditions:

| | |
|---|---|
| Ride Name:  Giant Gondola Wheel | Serial #: 40003593 |
| Manufacturer: Chance Manufacturing ("Chance") | PA ID #: 2660 |
| Date of Accident: 9/13/2019 | Time:  approx. 8:03 p.m. |
| PA Certified Inspector: Richard Warble  ("Warble") | Inspector #: 16275 |
| Temperature:  approx. 57 degrees | Wind:  0 – 2 MPH |

The Giant Gondola Wheel is a mobile (travelling) amusement ride owned and operated by Deggeller. The Wheel has 20 gondolas capable of carrying up to 6 adult riders in each.  The manufacturer specifies that riders must be at least 42" tall to ride.  The ride requires 2 operators, one stationed at the control panel and the other at the loading/unloading area of the ride.

At approximately 8:43 p.m., September 13th, 2019, the Department's Quality Assurance Inspector Randall Arndt ("Arndt"), received a phone call from a patron at the York Fair concerning the accident involving the Wheel. The patron did not witness the accident but reported that the local police were on scene and the general details of what he believed occurred. He related his understanding that a rider had fallen from a gondola while the Wheel was operating.  Arndt immediately notified Quality Assurance Inspector John Jardine ("Jardine"), who was temporarily assigned locally in York for the fair, and also notified the Quality Assurance Supervisor Joseph Filoromo ("Filoromo").

At approximately 8:49 p.m., Arndt received another phone call, this time from Richard Warble ("Warble"), the Pennsylvania Certified Inspector who inspected the Wheel for Deggeller.  Warble provided additional details concerning the accident, including information that one of the gondolas had tipped and a rider had fallen out. This constitutes notification of the accident to the Department from a Deggeller representative.

Jardine arrived at the fair at approximately 9:20 p.m.  Arndt and Filoromo arrived at approximately 11:00 p.m. The following information was gathered:

- A forty-five-year-old male rider ("Rider 1") fell out of Gondola 1.  The extent of his injuries was not known at the time and he was transported to a local hospital for evaluation and treatment.
- A forty-eight-year-old female rider ("Rider 2"), also in Gondola 1, was able to stay in the gondola and may have sustained injuries when the gondola righted itself and she fell to the floor. Rider 2 was also transported to the hospital for evaluation and treatment.
- The ride's loading/unloading operator ("Operator 1") was said to have sustained injuries while trying to aid Rider 1. Operator 1 reported that he fell from the deck of the ride injuring his hand and knee. No further information was provided as to the extent of his reported injuries.

The Department closed the ride and remained at the fair to conduct interviews, secure the scene and conduct an initial review and inspection of the ride. Arndt and Filoromo obtained information from both ride operators, and several of the ride assistants. Rider 1 and Rider 2 were interviewed later in the week, adding details and

2

confirming many of the details already gathered. The information assisted with determining the timeline of events and provided information concerning possible factors in the accident.

Additionally, both operators and the assistant stated they heard a loud noise originating from the Wheel but could not identify the origin of the noise. The operators stated that they decided to unload the Wheel when they noted Gondola 1 (containing Rider 1 and Rider 2) entering the station (the loading/unloading area). As Gondola 1 entered the station it was sideways. Normal orientation is upright, Gondola 1 was not swinging freely and appeared jammed, causing it to be 90 degrees from normal, or on its side. The operators further stated that they attempted to brake the Wheel and Operator 1 attempted to right Gondola 1, injuring himself in the attempt.

Rider 1 and Rider 2 noted that a large metal bar (part of the structure of the Wheel) became detached at one end of the Wheel and swung to the side of Gondola 1 just prior to the accident. Both stated that they called out repeatedly to the operators during the last rotation of the Wheel just prior to the accident. Rider 1 took a photograph of the metal bar near the top of the Wheel, see **Fig. 2**.

For the next two days the Department's amusement ride safety staff remained at the York Fair investigating the accident. Activities included:

- A detailed inspection of the Wheel
- Interview of Warble, the Pennsylvania Certified Inspector who inspected the Wheel at the York Fair
- Additional interviews with the ride operators and Deggeller management
- Attempts to solicit information from patrons that may have witnessed the accident
- Review of testimonial and photographic evidence
- Attempt to recreate the circumstances of the event leading up to the accident

Over the next several weeks the Department inspected five Giant Gondola Wheels, registered and operating throughout Pennsylvania, comparing information from the accident to information found at each of the Giant Gondola Wheels. The Department had regular communication with Chance, the ride manufacturer, with additional details that appear later in this report. The Department had issued a bulletin concerning the use and inspection of pins and r-keys on August 16, 2019 and reissued the bulletin on September 18, 2019. Both were sent by e-mail, the first to all owners and the second to all owners and inspectors of registered Pennsylvania amusement rides. The Department also sent a bulletin to owners of Giant Gondola Wheels on October 10, 2019, requiring them to verify the size, type and proper installation of pins and r-keys for their specific amusement ride.

**Investigative Details:**

- Gondola 1 was jammed in place during the accident, which caused it to tip (fail to swing freely and maintain an upright position while the wheel rotated) after a loose tie rod contacted the canopy (bonnet) of the gondola.
- The tie rod (described as the metal bar by Rider 1 & 2 and pictured in **Fig. 2**) is designed to be held in place by a pin and hairpin (a.k.a. r-key, "Hairpin" is Chance's terminology used in the manufacturer owner's manual), commonly known as a pin and r-key.
- The pin, Hairpin or pin and Hairpin combination failed causing the tie rod to come loose. The pin and Hairpin were not recovered so it is unclear if the failure occurred because of a missing Hairpin, a Hairpin that was pulled accidentally/intentionally, a faulty (also referred to as "sprung") Hairpin, a faulty pin, or that a pin or Hairpin that came in contact with the adjacent steel bearing block of the ride causing it to become dislodged.
- A faulty Hairpin was removed from one of the other tie rods during the initial investigation on the evening of the accident.  See **Fig. 1**.

3





**Fig. 1 – Faulty Hairpin removed from Wheel**      **Fig. 2 – Loose tie rod photographed by Rider 1**

- The tie rod came loose before the gondola was locked in place.  This is detailed by several witness accounts and photographs.  See **Fig. 2** and **Fig. 7**.
- Documentation showed that the Wheel was inspected by Warble as required by the Department[1] prior to opening of the ride.  Additional documentation showed that the Wheel was inspected daily by Deggeller.
- The location of the connection points for the tie rod to the sweep is not easily accessible and it is unlikely that pins or Hairpins were removed accidentally or intentionally.  See **Fig. 3**, **Fig. 4**, and **Fig. 5**.





**Fig. 3** and **Fig. 4** – Tie rod connection points not easily accessible by patrons.

- The tie rod pins are located away from patrons and are located next to the bearing block for the T bar to which the gondolas are mounted.  There is very little room between a Hairpin and the bearing block.  If the pin rotates, a sprung Hairpin could contact the bearing block.  See **Fig. 5** and **Fig. 6**.

---

[1] A Pennsylvania Certified Inspector must inspect the ride, which must pass the inspection, after the ride is set up on location and prior to its operation.  The ride must be inspected every 30 days thereafter if it remains in place.



**Fig. 5** – Tie rod pins location away from patrons and are very close proximity to bearing block.



**Fig. 6** – A tie rod pin connection is shown, note how close the Hairpin is to the bearing block

- Local media assisted by providing a bystander's video of the ride after the accident. Please note the captured still picture from the video details the loose tie rod that caused Gondola 1 to tip. See **Fig. 7**.



**Fig. 7** – The Wheel shortly after the accident, note the loose tie rod

- Rider 1 fell out of the gondola as the gondola was stuck in a position that was 90 degrees from normal (almost parallel to the deck) as it rotated through the station area. The Wheel travels a portion of a rotation to stop, which accounts for Rider 1's fall of approximately 25 feet as the Wheel slowed to stop. Rider 1 was said to have landed on power cables and asphalt. See **Fig. 8**.



**Fig. 8** – The area on the side of the wheel where Rider 1 landed

- The generator power plant for the midway was located behind the Wheel.  The noise from the power plant may have been enough to hinder communication between the operators, assistants and patrons.  Riders 1 & 2 emphasized that they attempted to shout to the operators prior to the accident.  The power plant was in operation during the investigation and the noise was as described by Riders 1 & 2 and made it difficult to communicate during the investigation. See **Fig. 9**.



**Fig. 9** – Notes the location and proximity of the power plant to the Wheel. The slats shown are to let air into the power plant but also do little to muffle the noise of the power plant

- Different size Hairpins have been found on the Wheel and the other Giant Gondola Wheels inspected by the Department.
- The Department has also found a variation in the size of pin being used to hold tie rods to the sweep on several of the inspected Giant Gondola Wheels.
- The Wheel has the tie rod pins installed from the outside pointing in toward the center.  This places the hairpin close to the bearing block.
- Three of the other Giant Gondola Wheels inspected by the Department had the pins installed from the inside pointing out (this configuration places the Hairpin away from the bearing block and away from possible tampering).
- The Department has issued a bulletin dated October 10, 2019 to Pennsylvania owners of Chance's Giant Gondola Wheels requiring them to confirm with the manufacturer the proper installation of pins and Hairpins.
- Chance's owner's manual for the Wheel shows pin and Hairpin installation as follows, see **Illustration 1**.



**Illustration 1** – Excerpt from Chance Wheel owner's manual, the diagram depicts the proper installation of pins and Hairpins

- The Department had ongoing communication with Chance and requested clarification on the proper pinning of the tie rod to the sweeps.  **Illustration 2**, below, was received by the Department on October 1, 2019 from Chance.  This depiction conflicts with the Chance Wheel owner's manual, **Illustration 1**.



**Illustration 2** – Chance's initial depiction of proper pinning of the tie rods received by the Department on October 1, 2019. Note this diagram depicts the pins installed from the outside pointing inward

8

- The Department has gathered conflicting information from operators, experienced industry members and from Chance. Post-accident, representatives from Chance provided both pinning methodologies: one on October 1, 2019 (**Illustration 2**) and the most recent on October 10, 2019 (**Illustration 3**).



**Illustration 3** – Chance's 2nd submission to the Department depicting the proper pinning of the tie rods received on October 10, 2019, note this diagram depicts the pins installed from the inside pointing outward

## III. Summary:

The following is a list of factors that (whether individually or in combination) may have contributed to Rider 1 falling from a gondola of the Wheel as it underwent normal operations at the York Fair on September 13, 2019:

- **Operations.** The power plant's proximity to the Wheel and noise level may have inhibited the operators from identifying the danger of the tie rod as it broke free from the Wheel's superstructure and the subsequent calls from Riders 1 & 2.

- **Maintenance/structural considerations.** As part of its on-site investigation the Department noted several maintenance/structural conditions that it brings to Deggeller and Chance's attention. The extent (if any) to which these contributed to the accident is not known and the Department offers no opinion in this regard. These conditions are as follows:

  - Pin installation. The Department has noted the discrepancies in the proper installation of pins as they relate to the tie rods. As part of the reopening requirements Deggeller will need to confirm and adhere to Chance's pinning requirements.

  - R-key serviceability. The Department has sent out bulletins to all Pennsylvania amusement ride owners and inspectors reminding them to pay attention to this detail.

**<u>IV. Reopening Requirements.</u>**

The Department is prepared to conduct an inspection of the Wheel to determine compliance with the requirements for reopening.  The following steps should be taken before the inspection occurs.

1.  Verify to the Department that the gondola, related tie rods and support structure are undamaged or replaced to meet manufacturer's specifications.  Verify the rest of the ride was not affected by the incident and is in good repair and working order.

2.  Verify the appropriate pins and r-keys for the ride are being utilized along with confirmation of their proper installation.

3.  Provide the Department a written description of: (a) any changes to the owner's manual concerning the specifications of the proper pins and r-keys to be used for the ride as described above; and (b) any updates to the operator's manual concerning operators being trained properly in emergency procedures and the audit process to ensure they are adhering to the requirements.

# EXHIBIT "B"



# pennsylvania
## DEPARTMENT OF AGRICULTURE
## DIVISION OF RIDES AND AMUSEMENTS

**TO:**       Owners of Amusement Rides
**FROM:**     Joseph G. Filoromo, supervisor
**SUBJECT:**  Safety Alert - "R-Keys"
**DATE:**     August 16, 2019

**********************************************************************

An incident has occurred at a Fair in Pennsylvania where the failure of an "R-Key" also known as "Hair Pin" (NO INJURIES) caused us to close and re-inspect equipment in an abundance of safety.

All Certified Inspectors are reminded that it is not possible to completely inspect the integrity of an "R-Keys without removing it and of the following per Chance Rides but applicable to all.



**Acceptable hair pins**
Dimension "A" equals dimension "B" in a relaxed position

**Unacceptable hair pins**
Dimension "A" is greater than dimension "B" in a relaxed position

NEVER ATTEMPT TO BEND A HAIR PIN BACK INTO SHAPE. REPLACE IT WITH A NEW PART.

The correct installation of a hairpin is shown. Incorrectly installed hairpins are more likely to fail, and will distort after only a few uses.



*Incorrect*                    *Correct*

It is acceptable common practice is to remove and inspect an appropriate sampling of the R-Keys or all critical ones for visual inspection. Anyone who assembles or does daily inspections MUST be aware of the above.

**THANK YOU**
**********************************************************************